The opinion of the Court was delivered by
Wardlaw, Ch.
Allen Anderson devised and bequeathed his whole estate to his mother for her life, and at her death all his lands and one-half of the residue of his estate to his nephew, Robert H. Anderson, and the other moiety of the residue to the children of his deceased brother, James Anderson. In the fourth clause of his will he declares : “ It is my will, if Robert H. Anderson should die without a lawful child, that his legacy, both real and personal, shall go to the above-named five children of James Anderson, viz : Indiana, Louisiana, Andrew, James Allen, and Ignatius Anderson, or the survivor or *400 survivors of them or their lawful children, if any they may have.”
The question referred to this Court by the Court of Appeals in Equity is, whether the devise to the children of James Anderson be void for remoteness ?
Under the operation of our Act of 1824, dispensing in such case with words of perpetuity and inheritance, the terms of gift to Robert H. Anderson are adequate to pass the fee or absolute estate. There is no direct gift to his children or issue ; and under the decisions of our Courts, his children or issue, if he had any, could not take as purchasers by implication from the employment of the terms children or issue in the limitation over and must be restricted to derivative rights through their ancestor. He died without ever having had a child, and consequently any controversy is impossible between his descendants and those claiming under the conditional limitation, or those claiming that his legacy is lapsed.
The present suit is in behalf of persons claiming that the testator died intestate’as to the estate given to Robert H. Anderson, except as to the interest given to this legatee, which has failed, against those claiming under the conditional limitation. The plaintiffs argue, that because grand-children, or remoter descendants of Robert H. living at his death, in the lack of a child might successfully contest the claim of those derived from the conditional limitation, plaintiffs have equal right to insist upon the enlarged construction of the term child, possible in any case to defeat the title of these, substitutes for Robert H.
But there is a glaring difference between the cases of those representing the primary object of a testator’s bounty and of those postponed not only to them but to others, explicitly declared to be the secondary and substituted objects of bounty. From the fact of making a will, in the absence of any declaration therein to the contrary, the intention of the testator is manifested to prefer his legatees who can in any event take to those whom the law appoints to the succession in the absence of a will. A construction of the same words may be properly made *401 to fulfil the intention of a testator, which would not be adopted to defeat his intention.
It is a rule of construction that the validity of a limitation over is tested by events possible at the time of its creation, and is not dependent on actual events. If the limitation over may not necessarily take effect within lives in being and twenty-one years afterwards, it is void for remoteness. On this principle, a gift over upon the death of the first taker without issue, is void upon the policy against perpetuities, for this form of words is established to intend a failure of issue in the remotest generations. It can hardly be disputed that this construction of the terms dying without issue, although now so firmly established as to be irreversible by Courts, violates in fact the intention of testators, and the grammatical construction of the words. The Parliament of Great Britain, and the Legislature of South-Carolina have evinced their dissatisfaction with the judicial construction of those terms, yet our enactment being prospective does not apply to the present case. Still the action of the Legislature declares the policy of the State, and. admonishes us not to follow decisions originally wrong, or very disputable, beyond their necessary scope. If the term child does not necessarily import issue, we should not extend the original error as to the interpretation of issue. We ought by the ordinary rules of construction first to ascertain the meaning of the terms, “ a lawful child,” and then consider whether, if the first taker “should die without a lawful child,” the estate should go over.
Without considering the difference which might possibly arise between the singular child and the plural children, there can be no dispute that the term children is not a technical word of limitation, and is ordinarily a word of purchase. Children, in its primary and ordinary sense, means the legitimate descendants of the first generation of the person named, and where there is nothing to show that the donor intended to use the term in a different sense, it will not include illegitimate offspring or step-children, or grand-children, or more remote descendants. Remoter descendants are sometimes permitted to take under an *402 enlarged sense of the term children, in support of the intention of the testator, where the will would be otherwise inoperative, or where the context, by the employment of the terms issue or descendants, promiscuously with children, exhibits the intention of testator to use the term children in a secondary and liberal sense. Such liberal construction of the term children is never made, except for the benefit of the issue of children, or from the force of the context. Hayes Est. Tail. 35; Dover vs. Alexander, 2 Hare, 282, and n. 1 ; Mowath vs. Carow, 7 Paige, 382 ; Marsh vs. Hague, 1 Ed. C. R. 186. It is not made when persons exist who accurately fulfil the terms of description. Pringle vs. Ravenel, 3 Rich. Eq. 342; Ruff vs. Rutherford, Bail. Eq. 9. In England, sometimes by implication, an estate for life in the ancestor is enlarged into an estate tail, or an estate in him in fee is cut down to an estate tail, by force of such terms as children, used in the direct gift, or in the limitation over ; but this implication is never made except in aid of the intention of the testator, and for the benefit of the issue, or where it is rendered necessary by the context. Blesard vs. Simpson, 42 E. C. L. R. 483; Doe vs. Webber ; 1 Bar. & Ald. 713. On the other hand, in many cases the terms issue or heirs of the body are interpreted to mean children for the sake of supporting the limitation over. Doe vs. Lide, 3 T. R. 593; Maddox vs. Starnes, 2 P. Wm. 421; Knight vs. Ellis, 2 R. C. C. 569; Gretton vs. Howard, 1 Meri. 488; Fearne, 374, 376 ; 2 Atk. 220. With us, where the estate tail does not exist, the implication of a fee conditional from words not- technically creating that estate tends to defeat the intention of testators and the interests of issue. Bedon vs. Bedon, 2 Bail. 231; Williams vs. Caston, 1 Strob. 130. In Morgan vs. Morgan, 5 Day 517, a testator pevised his real estate to his sons, A. B. & C., their heirs and assigns forever, and further provided that if either should die without children, his brothers should have his part in equal proportions. A. had issue, a son, who died in the lifetime of A.; and afterwards A. died without children living at his death. It was held that the words die without children, imported a dying *403 without children living at the death of the first devisee, and that the limitation over was good by way of executory devise. This is an authority directly upon the point in issue.
Our own case of Brummet vs. Barber, 2 Hill, 543, is decisive, so far as the personalty is involved. There the gift over of slaves was to the sons of the donors, if the first taker should “ die without children to heir the said negroes.” The Court supported the limitation over, defining children to be a particular class of descendants within the rule against perpetuities, and not equivalent to issue. There is little reason in this State, beyond conformity to English decisions, for making any distinction in the construction of limitations of real and personal estates.
In Stone vs. Maule, 2 C. E. C. R. 513, the gift o ver was dependent on the first taker’s dying without having any child or children. The Yice-Chancellor, in deciding the cause, makes the following remarks, which clearly intimate the occasions in which a liberal or exact construction of the term children should be made. He says, “ It has been assumed in the argument that the words, ‘ without having any child or children’ are to be taken as synonymous with the expression ! without issue.’ But why am I to put a construction upon those words which they do not strictly bear, for the purpose of defeating the intention of the testator. The question is not, What is the effect of words creating an estate tail, but of words making a gift over. It appears to me that I should defeat the testator’s intention in this case, if I did not hold that the gift over took effect on the death of the first taker,” who never had a child. See also Weakly vs. Rugg, 7 T. R. 322 ; Bell vs. Phyn, 7 Ves. 459 ; Wall vs. Tomlinson, 16 Ves. 413. I suppose that this case would not have been referred to the Court of Errors, except upon the notion that the limitation over could not be supported in consistency with Adams vs. Chaplin, 1 Hill, Ch. 281. In that case, the gift over upon the death of the first taker “ without an heir lawfully begotten by him,” was held to be too remote. But in truth, “ an heir lawfully begotten by him ” means pre *404 cisely an heir of his body. The technical terms of a fee conditional are employed. Hayes, in his excellent treatise on estates tail, in commenting upon the case of Gretton vs. Howard, (No. 37 in his tables,) justly remarks, that the phrase begotten by me merely imports an estate in special tail. Such was the construction given to the words “ heirs of her body by him ” (testator) in Platt vs. Powles, 2 M. & S. 65. Such, too, is the phraseology of the Holy Scriptures. Ezra, vii. 3; Isaiah, c. xxxix. 7; Matthew i. 8.
We are of opinion, that dying without a lawful child, in this conditional limitation, means dying without a child living at the death of the first taker.
But the validity of the limitation over, in this case, may be supported by additional considerations. The gift over here is to five persons named as in existence. After Guerry vs. Vernon, 1 N. & McC. 69, and Cox vs. Buck, 5 Rich. 604, we could not venture to hold- that the naming of persons in esse in a gift over necessarily implies a limitation to take effect within lives in being at the creation of the gift; for the existing individuals might take an interest transmissible to their posterity or representatives, and the limitation over not necessarily take effect within the rule against perpetuities. In the present instance, however, the gift over is to five named persons, or the “ survivor or survivors of them, or their lawful children, if any they may have.” If the limitation over had stopped at the words, “ survivors of them,” it is clear that the surviving would be construed to refer to the epoch of Robert H. Anderson’s death, and would limit the effect of such general words as dying without issue, much more of the actual phrase of dying without a lawful child, to death without descendants at. the time of Robert H. Anderson’s decease. Pells vs. Brown, Cro. Jac. 590; Anderson vs. Jackson, 16 John. 382; Hughes vs. Sayer, 1 P. Wm. 534; Stephens vs. Patterson, Treville vs. Ellis, Bail. Eq. 40; Hill vs. Hill, Dud. Eq. 71 ; Terry vs. Brunson, 1 Rich. Eq. 79. If, however, the words superadded to survivors “ or their lawful children, if any they may have,” exclude the notion of personal *405 benefit to the survivors, and import an estate in them transmissible to their heirs or representatives, then upon the distinction declared by Sir William Grant, in Massey vs. Hudson, 2 Meri. 130, and frequently recognized by our cases, the term survivor would be insufficient to fix the death of the first taker as the date of survivorship. But the words, “or their lawful children, if any they may have,” are not equivalent to heirs and assigns, and representatives, or other words importing transmissibility. In the absence of any strong reason for construing “or” as equivalent to “and,” it must have its natural disjunctive meaning. Here we think it is disjunctive and substitutional, and that the clause means, in case of the death of any of the children of James Anderson before the death of Robert H. Anderson, that their children then living shall take as substitutes of their parents. 2 Jarm. 666; Anderson vs. Smoot, Speer, Eq., 312 ; Girdlestone vs. Doe, 2 Sim. 225; Price vs. Locksly, 6 Beav. 180; Salisbury vs. Pelty, 3 Hare, 86.
We are of opinion that the limitation over to the children of James Anderson is not void for remoteness.
O’Neall, Wardlaw, Withers, Whitner, Glover and Munro, JJ., and Johnston and Dunkin, CC., concurred.
In the Court of Appeals in Equity the following judgment was then pronounced by
Wardlaw, Ch.
This Court having heretofore determined, that the limitation over, under the will of Allen Anderson, jr., to the children of James Anderson, if not invaled by the vice of remoteness, did not lapse by reason of the death of Robert H. Anderson.in the lifetime of testator ; and the Court of Errors, to whom the question was referred, having determined that this limitation was not void for remoteness: it follows that the Circuit decree must be modified accordingly; and it is so ordered and decreed.
Other matters of controversy are involved in the cause not affected by the appeal, and our judgment sustaining this limitation over may need further administrative orders. It is there- *406 forfe ordered, that the cause be remanded to the Circuit Court, with leave to the parties to apply for orders in execution of this decree and of the Circuit decree, so far as the latter is intact by this judgment.
Johnston and Dunktn, OC., concurred.

Decree modified.